# EXHIBIT 2

 SIGNATURE FINANCIAL

## MASTER SECURITY AGREEMENT (EQUIPMENT)

**Name and Address of Debtor:**
DM World Transportation LLC
8026 Sunport, Suite 304
Orlando, FL 32809

**Name and Address of Secured Party:**
Signature Financial LLC
10545 Willows Road NE, Suite 120
Redmond, WA 98052

THE UNDERSIGNED **DM World Transportation LLC**, a(n) **Florida Limited Liability Partnership**, ("Debtor") desires to establish financing arrangements with Signature Financial LLC (together with its successors, parent companies, subsidiaries, affiliates and assigns, "Secured Party") and Secured Party is willing to make loans and extensions of credit to Debtor. As a condition to such extensions of credit, Secured Party has required that any indebtedness incurred by Debtor be secured by this Master Security Agreement, dated as of **August 22, 2017** (this "Agreement").

**DEBTOR HEREBY REPRESENTS, COVENANTS AND AGREES WITH SECURED PARTY AS FOLLOWS:**

1. **Grant of Security Interest.**

(a) Secured Party has and may, from time to time, make loans and advances to Debtor, with such loan(s) to be evidenced by one or more promissory notes (each, a "Note" and collectively, the "Notes") to be repaid with interest as more fully described in each applicable Note. To secure payment due under the Notes and any renewals, extensions, amendments or modifications thereof, and also to secure any other indebtedness or liability of Debtor to Secured Party and any of its successors and/or assigns arising under this Agreement and/or any other document, certificate, agreement (whether written or oral) and/or instrument delivered in connection herewith (collectively, with this Agreement and the Notes, the "Loan Documents"), now or hereafter existing whether direct or indirect, absolute or contingent, due or to become due, including, without limitation, future advances (collectively, the "Obligations"), Debtor hereby grants to Secured Party a first position security interest in the following (collectively, the "Collateral"):

(i) Such equipment or other assets identified on each Schedule "A" hereto (collectively, the "Equipment"), now or hereafter executed by Debtor and Secured Party, together with all present and future attachments, accessories, additions, accessions, parts and supplies, and any replacements and substitutions thereof, installed in, affixed to or used in connection therewith;

(ii) All accounts and chattel paper arising out of all present and future leases, rental agreements, sales agreements (if any), or contracts relating to any of the Equipment and present and future rental payments, purchase options or other sums due on the leases, rental agreements and sales agreements (if any) for any of the Equipment, rights to payment earned under any contract for the use or rental of any of the Equipment, and any cash or non-cash proceeds thereof; and/or

(iii) To the extent not listed above as original collateral, proceeds (including without limit insurance proceeds) and products of the foregoing.

(b) Each item of Collateral identified on each Schedule "A" now or hereafter executed (whether numbered or unnumbered) by Debtor and Secured Party hereunder shall stand as collateral for all Obligations of Debtor to Secured Party. Each Schedule "A" now or hereafter executed, whether numbered or unnumbered, shall be expressly made a part of, and shall at all times be subject to all of the terms and conditions of, this Agreement as if each such Schedule "A" were executed and delivered simultaneously herewith.

2. **Perfection of Security Interest; Authority to File; Payments Unconditional.**

(a) Debtor authorizes Secured Party to file one or more financing statements (including, but not limited to, any amendments thereto that may be necessary in Secured Party's sole discretion) describing the Collateral to perfect the security interest created hereby and otherwise make it effective against third parties.

(b) Any certificate of title now or hereafter existing on any of the Collateral will be delivered to Secured Party and will recite the interest of Secured Party.

(c) All payments due under each Note shall be made without notice and demand and Debtor's obligation to make any payment thereunder or hereunder shall be absolute and unconditional. Debtor shall not be entitled to any reduction or setoff against such payment, nor shall this Agreement terminate, or the respective obligations of Secured Party or Debtor be otherwise affected by reason of any defect in, lack of fitness for use of, damage to, loss of possession or use of or destruction of, all of or any of the Collateral from whatsoever cause, the prohibition of or other restriction against Debtor's use of the Collateral, or for any other cause, it being the intention of the parties hereto that the indebtedness secured hereby shall continue to be payable in all events in the manner and at the times provided in the applicable Note and/or the other Loan Documents (as applicable).

3. **Ownership and Liens.**

Debtor has, or will have upon acquisition of the Collateral, and will maintain, good and marketable title to the Collateral, free and clear of any security interest, lien or encumbrance of any kind (except the security interest created hereby), except and to the extent the same are disclosed in writing to, and consented to, in writing by Secured Party. Debtor will not create or permit the existence of any lien, encumbrance or security interest on the Collateral other than that created hereby without the written consent of Secured Party (which consent may be withheld or conditioned, in Secured Party's sole and absolute discretion).

4. **Character of Collateral; Sale or Lease.**

(a) The Collateral is, and at all times will remain, personal property and Debtor will not permit the Collateral to become an accession to other personal property or a fixture on real property so as to preclude its removal without material injury.

(b) Debtor is engaged in a business where it will use the Equipment of the kind described above.

(c) Debtor will not dispose of Collateral. Debtor agrees promptly to notify Secured Party of any proposal to sell or dispose of the Collateral.

### 5. Purchase Money Security Interests.

To the extent Debtor uses the proceeds of any Note to purchase Collateral, Debtor's repayment of the Note shall apply on a "first-in-first-out" basis so that the portion of Note used to purchase a particular item of Collateral shall be paid in the chronological order Debtor purchased the Collateral.

### 6. Use of Collateral.

Debtor shall comply with all Federal, state and local laws relating to environmental protection, occupational health and safety or public health and safety which affect the use or operation of the Collateral. Debtor will not waste, injure or destroy any of the Collateral, use or permit the use of any of the Collateral in any unlawful manner or in any manner that does not comply with its intended use and/or the purposes for which such Collateral was acquired by Debtor.

### 7. Location of Collateral; Debtor's Legal Status and Financial Condition.

The Collateral is to be located as set forth on the applicable Schedule "A". Debtor will give Secured Party at least thirty (30) days' prior written notice before Debtor changes (i) the location of the Collateral (if the Collateral is to be located at a single location), (ii) its name, (iii) its place of business or, if more than one, its chief executive office, or (iv) its mailing address. The location of the Collateral shall remain within the continental United States. Debtor will not change its type of organization, jurisdiction of organization, or other legal structure, and will not in one transaction or a series of related transactions, merge into or consolidate with any other entity or sell all or substantially all of its assets.

### 8. Taxes and Assessments.

Debtor will pay, before delinquency, any and all taxes, assessments or other governmental charges that are or may become a lien against any of the Collateral and will pay any and all taxes which may be levied on any Obligation secured hereby.

### 9. Repairs and Inspection.

(a)     Debtor shall, at its sole expense at all times, maintain the Collateral in good operating order, repair, condition and appearance and protect the Collateral from deterioration, other than normal wear and tear, and furnish all required labor, parts, replacements and repairs. Upon any failure of Debtor to comply with the foregoing, Secured Party, in addition to its other rights and remedies hereunder, may, but shall not be obligated to, maintain and/or cause repairs to be made to the Collateral, the cost of which shall be a lien against the Collateral, added to the amount of indebtedness secured hereby, and payable on demand with interest at the maximum allowable legal rate.

(b)     Upon Secured Party's request, Debtor shall, at reasonable times during business hours, make the Collateral available to Secured Party or its agents for inspection.

### 10. Insurance.

Debtor shall bear the entire risk of loss of or damage to the Collateral. Debtor will keep the Collateral continuously insured (even while on rent or lease) by financially sound and reputable insurers against fire, theft and other hazards customarily insured against by companies in the same or similar business, in an amount equal to the full insurable value thereof, but no less than all sums secured hereby. Debtor will deliver the policies and receipts showing payment of premiums to the Secured Party. The policies shall include such form of loss payable clause as designated by and in favor of Secured Party with a stipulation that coverage will not be cancelled or diminished without a minimum of ten (10) days' prior written notice to Secured Party. The policies shall provide that no act or default of any person other than Secured Party or its agent or those claiming under Secured Party shall render the policies void as to Secured Party or affect Secured Party's right to recover in case of loss on such Collateral. In the event of loss, Secured Party shall have full power to collect any and all insurance upon the Collateral and to apply the same at its option to any Obligation secured hereby, whether or not matured, or to the restoration or repair of the Collateral. Secured Party shall have no liability for any loss that may occur by reason of the omission or lack of coverage of any such insurance. Debtor will maintain such liability and other insurance coverage as is customarily maintained by responsible entities of comparable size and with comparable assets and operations, as determined by Secured Party in its reasonable discretion.

### 11. Expenses Incurred by Secured Party.

Secured Party is not required to, but may at its option, pay any tax, assessment, insurance premium, expense, repair or other charges payable by Debtor, and any filing or recording fees. Any amount so paid, with interest thereon at the maximum rate permitted by law from date of payment until repaid, shall be secured hereby and shall be repayable by Debtor on demand. The rights granted by this paragraph are not a waiver of any other rights of Secured Party arising from a breach by Debtor of any of the terms and conditions of this Agreement and/or any other Loan Document.

### 12. Financial Statements.

Debtor shall provide: (i) within one hundred fifty (150) days after the end of each fiscal year, a balance sheet of Debtor as of the end of such year and the related earnings statement, prepared in accordance with Generally Accepted Accounting Principles which fairly, accurately and completely state the financial condition of Debtor as of the end of such year, and the results of its operations for the period covered; and (ii) upon Secured Party's request, quarterly or six-month interim financial statements (as requested by Secured Party) within sixty (60) days of the end of the period covered. Debtor represents and warrants to Secured Party that all the information to be provided will be correct and complete.

### 13. Financial Covenants.

Debtor shall comply with the following financial covenants: Not Applicable

### 14. Default.

Each of the following shall be deemed an event of default (each, an "Event of Default")

(a)     Any failure by Debtor to pay within ten (10) days of the date due the full amount of any payment of principal, interest, taxes, insurance premiums or other charges which are or may be secured hereby (including, without limitation, under any Note or Notes);

(b)     Any failure by Debtor, or by any guarantor of the Obligations, to perform or observe any covenant, condition or agreement herein or in any other agreement of Debtor, or any such guarantor, with Secured Party under any of the Loan Documents, including, without limitation, Debtor's failure to maintain in effect any of the policies of insurance required by this Agreement;

(c)     If any representation by Debtor or by any guarantor of the Obligations, herein or in any credit application or financial statement given by Debtor, or any such guarantor, to Secured Party as a basis for any extension of credit secured hereby or pursuant hereto shall prove at any time to be incorrect or untrue in any material respect;

2

(d) If any of the Collateral should be seized or levied upon under any legal or governmental process against Debtor or against any of the Collateral, or if there is a loss, material destruction, sale, encumbrance, concealment, or forfeiture of any of the Collateral or any material portion thereof;

(e) If Debtor or if any guarantor of the Obligations to Secured Party or to other persons or entities (i) becomes insolvent or is the subject of a petition in bankruptcy, either voluntary or involuntary, or in any other proceeding under the Federal bankruptcy laws; (ii) makes an assignment for the benefit of creditors, or (iii) is named in, or any of the Collateral is subjected to, a suit for the appointment of a receiver;

(f) Dissolution or liquidation of Debtor, or Debtor shall sell a material portion of its assets outside of the ordinary course of business, or if Debtor is a corporation, partnership or limited liability entity, if a majority of the equity interests in such entity is transferred and/or sold;

(g) If any guarantor of the Obligations revokes or attempts to revoke its guaranty, or dies or dissolves or "winds up", as applicable;

(h) If Debtor shall suffer a material adverse change in its condition or affairs, financial or otherwise, that in the reasonable opinion of Secured Party materially increases its risk with respect to the Obligations or materially impairs any security therefor of any of the Collateral or Secured Party shall at any time deem any of the Collateral to be in danger of misuse, concealment or misappropriation or in good faith believes the Collateral is insecure;

(i) If there is a default under any material instrument or agreement to which Debtor, or any guarantor of the Obligations, is a party with a third party resulting in a right by such third party, whether or not exercised, to declare Debtor or any such guarantor to be in breach of its obligations under such instrument or agreement and to enforce its remedies for such breach;

(j) Debtor shall fail to cause the Collateral or any portion thereof to be released or discharged from any lien, claim or liability as and when required by this Agreement;

(k) Debtor and/or any guarantor of the Obligations shall default under any of the Loan Documents, or any other agreement with or intended for the benefit of Secured Party or any assignee of any of Secured Party's rights hereunder or any affiliate of Secured Party, whether now existing, hereafter executed or executed simultaneously herewith;

(l) If Debtor is a sole proprietorship or an individual, the death of Debtor.

### 15. Remedies.

(a) Upon the occurrence of any Event of Default Secured Party may, at its sole option, do any one or more of the following:

(i) Cease advancing money or extending credit to or for the benefit of Debtor under any agreement between Debtor and Secured Party;

(ii) Declare the entire unpaid indebtedness of Debtor secured hereby (including, without limitation, any and all Notes) to be immediately due and payable, whereupon it shall become immediately due and payable without presentment, demand, protest, or notice of any kind, all of which are hereby expressly waived by Debtor;

(iii) Enter any premises of Debtor, or any other party, with or without judicial process and take possession of any or all of the Collateral, regardless of whether such Collateral relates to the Event of Default or otherwise, in Secured Party's sole discretion. Secured Party may remove all or any of the Collateral or may remain on the premises for the purpose of collecting, preparing and disposing of the Collateral, without any liability for rent or occupancy charges. All rights of Debtor in the Collateral so removed and/or possessed by Secured Party shall terminate absolutely and the Collateral shall become Secured Party's property. Debtor shall, upon written request from Secured Party, assemble the Collateral and any records pertaining thereto and make them available at a place designated by Secured Party that is reasonably convenient to both parties;

(iv) Have all other rights and remedies of a secured party under the Uniform Commercial Code, as amended (the "Code"), as well as any other rights under this Agreement and/or any of the other Loan Documents;

(v) Recover from Debtor expenses of re-taking, holding, storing, preparing for sale, selling or the like which expenses shall include, but not be limited to, Secured Party's reasonable attorneys' fees and legal expenses, auctioneers fees, sales commissions and advertising expense;

(vi) Dispose of the Collateral at a public or private sale and is not required to repossess the Collateral before selling it. Any requirement of reasonable notice of any disposition of the Collateral shall be satisfied if such notice is sent to Debtor ten (10) days prior to such disposition at its address stated herein, unless another address is given to Secured Party in writing. Debtor will be credited with the net proceeds of such sale only when they are actually received by Secured Party, and Debtor shall continue to be liable for any deficiency remaining after the Collateral is sold or otherwise disposed of; and/or

(vii) Dispose of the Collateral in its existing condition or, at its election, may take such measures as it deems necessary or advisable to refurbish, repair, improve, process, finish, operate, demonstrate and prepare for sale the Collateral and may store, ship, reclaim, recover, protect, advertise for sale or lease, and insure the Collateral.

(b) If Secured Party disposes of any of the Collateral, Debtor agrees to pay any deficiency remaining after application of the net proceeds to any indebtedness secured hereby. No remedy is exclusive of any other remedy but each is cumulative and in addition to every other remedy given under this Agreement, any of the Loan Documents or existing at law or in equity and, to the extent permitted by applicable law, be exercised either concurrently or separately, in Secured Party's sole discretion. The exercise of any one remedy shall not be deemed an election of such remedy of to preclude the exercise of any other remedy. Secured Party shall be entitled to an injunction or decree of specific performance to enforce any or all of its rights and remedies under this Agreement and Debtor waives any requirements for the posting of bond or other security in connection with any such injunction or decree.

### 16. Assignment.

This Agreement shall bind and shall inure to the benefit of the successors and assigns of Secured Party and shall bind all persons who become bound as a debtor to this Agreement. This Agreement and any instrument that it secures may be assigned by Secured Party at any time without notice to Debtor and without relieving Debtor of its duties hereunder and Debtor agrees that it shall not assert any defense, offset, or counterclaim against any assignee of Secured Party's interest except defenses which cannot be waived. Debtor may not delegate its obligations under this Agreement without Secured Party's prior written consent (which consent may be withheld or conditioned, in Secured Party's sole and absolute discretion).

### 17. Attorney In Fact.

Debtor grants Secured Party (and as agent for Secured Party, any third party filing service company as chosen by Secured Party) a specific power of attorney for Secured Party (inclusive of any assignee of Secured Party) to use as follows: (a) Secured Party may sign and file on Debtor's behalf any document Secured Party deems necessary to (i) perfect or protect Secured Party's interest in the Collateral or pursuant to the Code; (ii) make any changes to the Loan Documents which are authorized by the Loan Documents; and/or (iii) to prepare, modify and/or execute any documents necessary to enforce any of Secured Party's rights herein as to the Collateral including but not limited to all documents necessary to transfer the title to the Collateral; and (b) Secured Party may sign, endorse or negotiate for Secured Party's benefit any instrument representing proceeds from any policy of insurance covering the Collateral or any Collateral pledged hereunder. Failure of Secured Party to perfect its security interest hereunder shall not in any way affect or impair the Obligations of Debtor or of any guarantor. In the event it is necessary to amend or add to any of the terms of this Agreement to insert (or reflect a change in) the description of the serial numbers (or other identifying features) of any of the Collateral, Debtor specifically authorizes Secured Party to make any such additions and/or amendments to this Agreement and/or the applicable Schedule "A" which additions and/or amendments shall be incorporated into this Agreement as if originally set forth herein. Secured Party shall advise Debtor of any such amendments described in this paragraph.

### 18. Indemnification.

Debtor hereby agrees to indemnify, save and keep harmless Secured Party, its agents, employees, successors and assigns, from and against any and all losses, damages (including, without limitation, indirect, special or consequential), environmental hazards or penalties of any kind or nature, injuries (whether to property, person or otherwise), claims, actions and suits, including, without limitation, legal expenses and attorney's fees of whatsoever kind and nature (including, without limitation, reasonable costs and expenses incurred by Secured Party in defending claims or suits brought against it by Debtor or any account debtor) in contract or tort, including, but in no way limited to, Secured Party's strict liability in tort, unless and except to the extent of Secured Party's gross negligence or willful misconduct is the proximate cause of any such loss, damage, penalty, injury, claim, action or suit, and Debtor shall at its own expense defend any and all such actions, arising out of the selection, modification, purchase, ownership, acceptance or rejection of any item of Collateral, and the delivery, possession, maintenance, use, condition (including without limitation latent or other defects, whether or not discoverable by Secured Party or Debtor, and any claim for patent, trademark or copyright infringement) or operation or any item of Collateral by whom so ever used or operated or arising out of or resulting from the condition of any item of Collateral, sold or disposed of after use by Debtor, employee of Debtor, or any designee or lessee of Debtor. The indemnities and assumptions of liability herein provided for shall continue in full force and effect, notwithstanding the termination of this Agreement, whether by expiration of time, operation of law or otherwise.

### 19. Governing Law.

**This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without reference to principles of conflicts of laws, except to the extent that the Code requires the application of the law of another jurisdiction.**

### 20. Waiver of Jury Trial.

EACH OF THE PARTIES HERETO UNCONDITIONALLY WAIVES ITS RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF THIS AGREEMENT, ANY OF THE RELATED DOCUMENTS, ANY DEALINGS BETWEEN DEBTOR AND SECURED PARTY RELATING TO THE SUBJECT MATTER OF THIS TRANSACTION, AND/OR THE RELATIONSHIP BETWEEN DEBTOR AND SECURED PARTY. THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL-ENCOMPASSING OF ANY AND ALL DISPUTES BETWEEN THE PARTIES. THIS WAIVER IS IRREVOCABLE AND CANNOT BE MODIFIED EITHER ORALLY OR IN WRITING. IN THE EVENT OF LITIGATION, THIS DOCUMENT MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL BY THE COURT.

### 21. Jurisdiction; Venue.

THIS AGREEMENT WAS EXECUTED, MADE AND IS TO BE PERFORMED IN NASSAU COUNTY, NEW YORK, REGARDLESS OF THE ORDER IN WHICH SIGNATURES OF THE PARTIES SHALL BE AFFIXED HERETO. ALL MATTERS INVOLVING THE CONSTRUCTION, VALIDITY, PERFORMANCE AND ENFORCEMENT OF THE AGREEMENT WILL BE GOVERNED BY THE LAWS OF THE STATE OF NEW YORK, WITHOUT GIVING EFFECT TO PRINCIPLES OF CONFLICTS OF LAW OR CHOICE OF LAW. As part of the consideration for Secured Party providing the financing described herein Debtor agrees that Secured Party shall have the option to choose the venue and forum of any litigation, action or proceeding arising directly or indirectly from this Agreement and/or any of the Note(s) and Debtor hereby consents that same may be heard in the Supreme Court of the State of New York, County of Nassau or in any U.S. District Court located in the Eastern District of New York which Secured Party may select; and Debtor consents to the personal jurisdiction of any such court. Provided, however, if Debtor commences any litigation, action or proceeding against Secured Party, it may only do so in the Supreme Court of the State of New York, County of Nassau or the U.S. District Court for the Eastern District of New York The provisions of this paragraph are not exclusive insofar as Secured Party is concerned and do not prohibit Secured Party from commencing any necessary legal action or instituting any appropriate proceeding in any court of competent jurisdiction or venue. Debtor agrees that any process, notice of motion or other application to any of said courts (or a judge thereof) in any such action or proceeding shall be sufficiently served if sent to Debtor by certified mail, return receipt requested, to the address set forth above (and service so made shall be deemed complete five (5) days after the same has been posted as aforesaid).

### 22. Severability.

Should any provision of this Agreement and/or any of the Notes delivered in connection herewith be found to be void, invalid or unenforceable by a court of competent jurisdiction, that finding shall only affect the provisions found to be void, invalid or unenforceable and shall not affect the remaining provisions of this Agreement and/or the other Notes.

### 23. Notices.

Any notice or demand required or permitted by this Agreement may be given by first class mail postage prepaid or overnight delivery to the party at the address shown above until changed in writing by notice to the other party.

### 24. Integration.

This Agreement and any schedules (including any present and/or future Schedule "A"s executed by Debtor and Secured Party) or exhibits incorporated herein are the entire Agreement between the parties and supersedes any prior agreements or understandings relating to the subject matter hereof. The parties recognize that simultaneously herewith, Debtor is executing a Note along with such other Loan Documents necessary to implement the terms of this

Agreement. No course of prior dealing between the parties, no usage of trade and no parol or extrinsic evidence of any nature shall be used to supplement, modify or vary any of the terms of this Agreement.

### 25. Waivers and Modification.

No waiver or modification by Secured Party of any of the terms or conditions hereof shall be effective unless in writing signed by Secured Party. No waiver or indulgence by Secured Party as to any required performance or obligation of Debtor shall constitute a waiver as to any subsequent required performance or obligations of Debtor.

### 26. Joint and Several Liability.

If there is more than one Debtor, their obligations shall be joint and several.

### 27. Expenses and Attorneys' Fees.

Debtor shall pay all of Secured Party's expenses, attorneys' fees, court costs, and disbursements (collectively, the "Expenses") arising out of, or related to, the protection, preservation and/or enforcement of Secured Party's rights under this Agreement, each Note and/or the other Loan Documents (whether or not Debtor is in default thereof or an action has been commenced) including but not limited to all Expenses incurred in connection with the protection, preservation and/or enforcement of Secured Party's interests in any related bankruptcy proceeding. Debtor agrees, and to the extent permitted by law, that the amount of the Expenses shall be included in the computation of the indebtedness secured hereby.

### 28. Further Assurances.

Debtor agrees to execute any further documents, and to take any further actions, reasonably requested by Secured Party to evidence or perfect the security interests granted herein, to maintain the first priority of the security interests, or to effectuate the rights granted to Secured Party herein. Debtor hereby authorizes Secured Party to insert any serial numbers and other identification data of the Collateral, dates, and other omitted factual matters or descriptions into this Agreement, the Note, or any other forms, schedules, or exhibits executed pursuant hereto.

**ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, EXTEND CREDIT, OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER NEW YORK LAW.**

Dated: August 22, 2017

**DEBTOR:** DM World Transportation LLC

By: _(signature)_

Name: Abduwosil Razikov

Title: Manager

**SECURED PARTY:** Signature Financial LLC[2]

By: _(signature)_

Name: Leslie Farrell

Title: Regional Operations Manager

---

**IMPORTANT INFORMATION ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT**

To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account. What this means for you: When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

---

[2] Signature Financial LLC is a New York limited liability company, which does business in the States of Arizona, California, Florida and Indiana as Signature Financial and Leasing LLC and in the State of Texas as Signature Business Leasing LLC.

 | **SIGNATURE FINANCIAL**

## SCHEDULE A

Contract Number: 114049004

This Schedule A is being delivered pursuant to that certain Master Security Agreement, dated August 22, 2017, (hereinafter, the "Agreement"), by and between DM World Transportation LLC, as Debtor and Signature Financial LLC, as Secured Party. This Schedule A shall be incorporated into, be deemed a part of, and at all times be subject to, the terms and provisions of the Agreement.

EQUIPMENT: The Equipment being pledged by Debtor to Secured Party in this Schedule A pursuant to the Agreement is as follows:

| Equipment Description | Serial/Identification No. |
|---|---|
| Twenty-Five (25) 2019 Great Dane model CCC-3314-21053 dry van trailers | 1GRAP0624KT154128, 1GRAP0626KT154129, 1GRAP0622KT154130, 1GRAP0624KT154131, 1GRAP0626KT154132, 1GRAP0628KT154133, 1GRAP062XKT154134, 1GRAP0621KT154135, 1GRAP0623KT154136, 1GRAP0625KT154137, 1GRAP0627KT154138, 1GRAP0629KT154139, 1GRAP0625KT154140, 1GRAP0627KT154141, 1GRAP0629KT154142, 1GRAP0620KT154143, 1GRAP0622KT154144, 1GRAP0624KT154145, 1GRAP0626KT154146, 1GRAP0628KT154147, 1GRAP062XKT154148, 1GRAP0621KT154149, 1GRAP0628KT154150, 1GRAP062XKT154151, 1GRAP0621KT154152 |

Together with all present and future attachments, accessories, additions, accessions, parts, supplies, and any replacements thereof, installed in, affixed to, or used in connection with said property.

LOCATION: The Equipment is located at the following premises: 8026 Sunport, Suite 304, Orlando, FL 32809

The Equipment identified herein is in addition to, and made part of, the Collateral identified collectively on each and every Schedule A (whether numbered or unnumbered), previously, concurrently or hereafter executed by Debtor and Secured Party pursuant to the Agreement.

DEBTOR: DM World Transportation LLC
By:
Name: Abduvosit Kazikov
Title: Manager
Dated: September 6, 2018

SECURED PARTY: Signature Financial LLC[1]
By:
Name: Leslie Farrell
Title: Regional Operations Manager

---

[1] Signature Financial LLC is a New York limited liability company, which does business in the States of Arizona, California, Florida and Indiana as Signature Financial and Leasing LLC and in the State of Texas as Signature Business Leasing LLC.

IMPORTANT INFORMATION ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT
To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account.
What this means for you: When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.



## SCHEDULE A

Contract Number: 114049008

This Schedule A is being delivered pursuant to that certain Master Security Agreement, dated August 22, 2017, (hereinafter, the "Agreement"), by and between DM World Transportation LLC, as Debtor and Signature Financial LLC, as Secured Party. This Schedule A shall be incorporated into, be deemed a part of, and at all times be subject to, the terms and provisions of the Agreement.

EQUIPMENT: The Equipment being pledged by Debtor to Secured Party in this Schedule A pursuant to the Agreement is as follows:

| Equipment Description | Serial/Identification No. |
|---|---|
| Seventeen (17) 2019 Great Dane model CCC-3314-21053 dry van trailers | 1GRAP0625KT154221, 1GRAP0627KT154222, 1GRAP0629KT154223, 1GRAP0620KT154224, 1GRAP0622KT154225, 1GRAP0624KT154226, 1GRAP0626KT154227, 1GRAP0628KT154228, 1GRAP062XKT154229, 1GRAP0626KT154230, 1GRAP0628KT154231, 1GRAP062XKT154232, 1GRAP0621KT154233, 1GRAP0623KT154234, 1GRAP0625KT154235, 1GRAP0627KT154236, 1GRAP0629KT154237 |

Together with all present and future attachments, accessories, additions, accessions, parts, supplies, and any replacements thereof, installed in, affixed to, or used in connection with said property.

LOCATION: The Equipment is located at the following premises: 8026 Sunport, Suite 304, Orlando, FL 32809

The Equipment identified herein is in addition to, and made part of, the Collateral identified collectively on each and every Schedule A (whether numbered or unnumbered), previously, concurrently or hereafter executed by Debtor and Secured Party pursuant to the Agreement.

DISBURSEMENT INSTRUCTIONS: Debtor expressly acknowledges and agrees that no loan proceeds will be disbursed by Secured Party until all of Secured Party's conditions for making the loan have been satisfied (in Secured Party's sole discretion). Debtor hereby authorizes Secured Party to disburse the loan proceeds of $507,053.63 as follows:

| Payee Name: | Disbursement Amount: |
|---|---|
| Great Dane LLC dba Great Dane Trailers, Inc. | $505,036.00 |
| Financed Documentation Fee | $250.00 |
| Florida Documentary Stamp Tax | $1,767.63 |
| **Total Loan Disbursements:** | **$507,053.63** |

DEBTOR: DM World Transportation LLC
By:
Name: Abduvosit Razikov
Title: Manager

SECURED PARTY: Signature Financial LLC[1]
By:
(Authorized) Leslie Harrell
Regional Operations Manager

[1] Signature Financial LLC is a New York limited liability company, which does business in the States of Arizona, California, Florida and Indiana as Signature Financial and Leasing LLC and in the State of Texas as Signature Business Leasing LLC.

IMPORTANT INFORMATION ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT
To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account.
What this means for you: When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

 **SIGNATURE FINANCIAL**

## SCHEDULE A

Contract Number: 114049009

This Schedule A is being delivered pursuant to that certain Master Security Agreement, dated August 22, 2017, (hereinafter, the "Agreement"), by and between DM World Transportation LLC, as Debtor and Signature Financial LLC, as Secured Party. This Schedule A shall be incorporated into, be deemed a part of, and at all times be subject to, the terms and provisions of the Agreement.

EQUIPMENT: The Equipment being pledged by Debtor to Secured Party in this Schedule A pursuant to the Agreement is as follows:

| Equipment Description | Serial/Identification No. |
|---|---|
| Five (5) 2016 Freightliner model Cascadia truck tractors | 3AKJGLDR2GSHH6483, 3AKJGLDR4GSHH6484, 3AKJGLDR6GSHH6485, 3AKJGLDR8GSHH6486, 3AKJGLDR1GSHH6491 |
| Five (5) 2018 Freightliner model Cascadia truck tractors equipped with APU units | 3AKJHHDR1JSJV4332/HTG1105733, 3AKJHHDR3JSJV4333/HTG1105734, 3AKJHHDR5JSJV4334/HTG1105735, 3AKJHHDR7JSJV4335/HTG1082673, 3AKJHHDR9JSJV4336/HTG1105737 |

Together with all present and future attachments, accessories, additions, accessions, parts, supplies, and any replacements thereof, installed in, affixed to, or used in connection with said property.

LOCATION: The Equipment is located at the following premises: 8026 Sunport, Orlando, FL 32809

The Equipment identified herein is in addition to, and made part of, the Collateral identified collectively on each and every Schedule A (whether numbered or unnumbered), previously, concurrently or hereafter executed by Debtor and Secured Party pursuant to the Agreement.

DISBURSEMENT INSTRUCTIONS: Debtor expressly acknowledges and agrees that no loan proceeds will be disbursed by Secured Party until all of Secured Party's conditions for making the loan have been satisfied (in Secured Party's sole discretion). Debtor hereby authorizes Secured Party to disburse the loan proceeds of $939,253.45 as follows:

| Payee Name: | Disbursement Amount: |
|---|---|
| Commercial Credit Group Inc / Commercial Credit Group | $936,303.45 |
| Florida Documentary Stamp Tax | $2,450.00 |
| Financed Documentation Fee | $500.00 |
| Total Loan Disbursements: | $939,253.45 |

DEBTOR: DM World Transportation LLC
By:
Name: Abduvosit Razikov
Title: Manager
Date: July 11, 2019

SECURED PARTY: Signature Financial LLC[1]
By: (Authorized signer)
**Karen Beauchemin**
**Documentation Officer**

---

[1] Signature Financial LLC is a New York limited liability company, which does business in the States of Arizona, California, Florida and Indiana as Signature Financial and Leasing LLC and in the State of Texas as Signature Business Leasing LLC.

IMPORTANT INFORMATION ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT
To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account.
What this means for you: When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.